IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                   Plaintiff,<br><br>    vs.<br><br>DUANE BYRON FIELDS,<br><br>                   Defendant. | Case No. 3:12-cr-00022-JKS-1<br><br>ORDER<br>[Re: Motion for Reduction in<br>Sentence at Docket No. 207] |

At Docket No. 207, Duane Byron Fields, a federal prisoner represented by counsel, moves for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(I). The motion is based on the First Step Act of 2018 ("FSA"), Pub. L. No. 115-391, 132 Stat. 5194 (2018), which allows prisoners, after exhausting administrative procedures, to petition courts for sentence modifications based on extraordinary and compelling reasons, a process also known as compassionate release. The Government opposes the request. Docket No. 211. In response to this Court's order, Docket No. 215, the parties have filed supplemental briefing addressing Fields' motion in light of the current coronavirus ("COVID-19") pandemic, Docket Nos. 16, 17. The United States Probation Office has also filed a Supplemental Final Presentence Investigation Report ("Supplemental PSR"). Docket No. 220 (SEALED). Oral argument was not requested and was not necessary for the adjudication of this motion. For the reasons set forth below, the motion is **GRANTED**.

I.  BACKGROUND

In 2012, a trial jury found Duane Byron Fields guilty of certain federal drug offenses. Docket No. 71; Docket No. 102 (Judgment). This Court sentenced Fields to 180 months'

imprisonment, to be followed by 15 years of post-release supervision. Docket No. 102. His conviction was subsequently affirmed on appeal. *United States v. Fields*, 539 F. App'x 776, 777 (9th Cir. 2013). The Court later reduced Fields' sentence to 150 months' imprisonment pursuant to Amendment 782 to the United States Sentencing Guidelines ("U.S.S.G."), which retroactively changed the drug quantity tables at U.S.S.G. § 2D1.1 to lower by two levels the base offense level for most drug quantities.[1] Docket Nos. 198, 199. Fields is now 47 years old and currently in custody at Federal Correctional Institution ("FCI") Terminal Island, a low-security FCI, with a projected release date of October 27, 2022. *See* Federal Bureau of Prisons ("BOP") Inmate Locator Database, *available at* http://bop.gov/inmateloc/ (Register Number 13474-006).

On January 31, 2020, Fields filed the instant counseled motion for a reduction in sentence pursuant to 18 U.S.C. § 3582(c)(1)(A). Docket No. 207. Fields avers that he was diagnosed with advanced-stage non-Hodgkin's lymphoma in June 2016, several months after he first noticed swelling on the left side of his throat. *Id.* at 3-4. Fields received six cycles of chemotherapy from November 2017 to April 2018. *Id.* at 5. In May 2019, Fields received a PET scan that indicated that his cancer is remission. *Id.* at 6. He argues, however, that BOP has failed to timely provide the

---

[1] In July 2019, this Court denied Fields' motion to reduce his sentence pursuant to 28 U.S.C. § 2255 on the ground that the application of a 10-year mandatory minimum sentence based on a prior qualifying drug conviction was invalid because the sentencing court did not comply fully with the procedural requirements of 21 U.S.C. § 851. Docket No. 204. The Ninth Circuit Court of Appeals granted Fields a certificate of appealability, and his appeal of this Court's denial is currently pending in the appellate court. Docket No. 206. The Government argues that the pendency of Fields' appeal divests this Court of jurisdiction over the instant motion for compassionate release. Docket No. 211 at 9-10. Because the issues presented in the § 2255 appeal and the instant motion are factually and legally distinct, the Court concludes that it retains jurisdiction over Fields' compassionate release motion. *Cf. Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (the filing of a notice of appeal divests the district court of jurisdiction over aspects of the case that are the subject of the direct appeal).

2

maintenance treatment recommended by his physicians. *Id.*; Docket No. 207-2. Fields further claims that he suffers from peripheral neuropathy as a result of the chemotherapy, which results in numerous "symptoms [that] interfere with his mobility and physical stamina." Docket No. 207 at 6; Docket No. 207-2 at 2.

In support of his motion, Fields submits documentation showing that, on April 15, 2019, he submitted a request to the prison warden asking that he be released because he had been diagnosed with a terminal, incurable disease with a life expectancy of 18 months or less. Docket No. 207-3 at 1. The warden denied his request on August 2, 2019, finding that a review of Fields' medical records showed that he was not suffering from a terminal medical condition. Docket No. 207-3 at 2. The record does not indicate that Fields pursued an administrative appeal of that adverse determination.

In response to this Court's order, the Government opposed Fields' judicial request for compassionate release, arguing that Fields is neither eligible for such relief nor has he established compelling reasons for why such relief should be granted. Docket No. 211. Because the parties' briefing was completed before the widespread emergence of the COVID-19 pandemic in this country, the Court ordered the parties to submit supplemental briefing addressing Fields' compassionate release request in light of the current pandemic. Docket No. 215. The Government continues to oppose Fields' compassionate release request. Docket No. 216. Fields argues that the pandemic presents extraordinary and compelling reasons to grant Fields' motion, "[g]iven his history of cancer and ongoing difficulties seeking adequate treatment for his fragile condition." Docket No. 217 at 2.

3

The U.S. Probation Office filed a Supplemental PSR, which addressed Fields' recent disciplinary conduct, investigated and assessed the appropriateness of Fields' proposed residence upon release, and estimated the danger Fields would pose to the community if released. Docket No. 220 (SEALED). The Supplemental PSR noted that Fields has had no reported disciplinary incidents since January 2017, when Fields moved to reduce his sentence pursuant to Amendment 782, and the Court declined to reduce Fields' sentence to the extent requested due, in part, to Fields' two disciplinary charges in 2016. *Id.* at 1; Docket No. 195 (SEALED) at 1. The Probation Office also determined that Fields' proposed residence, his mother's home in Anchorage, is appropriate.[2] Docket No. 220 (SEALED) at 3. The Probation Officer further concluded that, "[b]ased on the defendant's criminal history, his pattern of violating conditions of supervision and possessing/using weapons, his use of others to facilitate criminal activity, and the lack of addressing his substance abuse and mental health issues through corrective programs, it is assessed the defendant poses a significant risk of danger to the community if released." *Id.* at 4.

## II. STANDARD OF REVIEW

"'[A] judgment of conviction that includes [a term of imprisonment] constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *See Dillon v. United States*, 560 U.S. 817, 824-25 (2010) (quoting 18 U.S.C. § 3582(b)). One such exception is referred to as compassionate release. Prior to December 21, 2018, the provision of Title 18

---

[2] The Supplemental PSR notes that Fields' mother would require Fields to quarantine for 14 days at another location upon his return to Alaska and prior to residing in the residence. Docket No. 220 (SEALED) at 3. In response to this Court's order, counsel for Fields has indicated that Fields may reside at an Anchorage hotel for the 14-day quarantine period if compassionate release is granted. Docket No. 222. Counsel further indicates that the Probation Office has verified that such housing is available. *Id.*

4

relating to compassionate release of federal prisoners provided that compassionate release was available "upon motion of the Director of the [BOP]." 18 U.S.C. § 3582(c)(1)(A)(i) (2018). On December 21, 2018, the FSA amended that section to provide:

> [T]he court, upon motion of the Director of the [BOP], *or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility* . . . may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that–
>
> (1)(A) Extraordinary and compelling reasons warrant such a reduction;
>
> . . . .
>
> (2) The defendant is not a danger to the safety of any person or to the community, . . . and
>
> (3) The reduction is consistent with [applicable] policy statements [issued by the Sentencing Commission].

FSA, Pub. L. No. 115-391, 132 Stat. 5194 (emphasis added).

## III.  DISCUSSION

A.   Whether Fields Has Exhausted His Administrative Remedies

For this Court to exercise its authority to reduce Fields' sentence pursuant to 18 U.S.C. § 3582(c)(1)(A), it must first conclude that the appropriate administrative remedies were exhausted. The amended statute allows a defendant to file a motion for compassionate release upon the earlier of two dates. First, a defendant may file a motion "after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf." 18 U.S.C. § 3582(c)(1)(A). Second, a defendant may file a motion upon "the lapse of 30 days from the receipt of [a defendant's request to bring a motion] by the warden of the defendant's facility." *Id.* While courts have generally recognized that § 3582(c)(1)(A) imposes a mandatory requirement

5

that a defendant make a formal request to his or her warden,[3] courts have disagreed as to what, if anything, a defendant must do after the initial request and before filing in court.

In this case, the records show that Fields made a compassionate release request to his prison warden on April 15, 2019. Docket No. 207-3 at 1. The warden denied his request on August 2, 2019. Docket No. 207-3 at 2. Rather than pursuing an administrative appeal of that adverse determination, as the warden's determination informed Fields of his right to do, Fields filed the instant counseled motion on January 31, 2020. Docket No. 207. The Government argues that Fields' failure to pursue his right to administrative appeal means that he not exhausted "all of his administrative appeal avenues before filing the instant motion, as § 3582(c)(1)(A) specifically requires."[4] Docket No. 211 at 9.

---

[3] The Court notes that some courts have waived the administrative exhaustion requirement in light of the COVID-19 pandemic, as Fields urges this Court to do. *See, e.g.*, *United States v. Perez*, No. 17 Cr. 513-3 (AT), 2020 WL 1546422, at *2 (S.D.N.Y. April 1, 2020) (excusing exhaustion requirement where defendant had "undisputed fragile health" and only three weeks left on his sentence); *United States v. McCarthy*, No. 3:17-CR-0230 (JCH), 2020 WL 1698732, at *4 (D. Conn. Apr. 8, 2020) (excusing exhaustion requirement where defendant was 65 years old, suffered from a host of well-documented heart and respiratory ailments, and had only 26 days left on his sentence); *United States v. Zukerman*, No. 16 CR. 194 (AT), 2020 WL 1659880, at *4 (S.D.N.Y. Apr. 3, 2020) (excusing exhaustion requirement where defendant was 75 years old and provided medical records proving he suffered from diabetes, hypertension, and obesity); *United States v. Colvin*, No. 19 Cr. 179, 2020 WL 1613943, at *2 (D. Conn. Apr. 2, 2020) (excusing exhaustion requirement because defendant only had 11 days left on her sentence and provided medical records that she suffered from type II diabetes and high blood pressure). Judicially-created exceptions to statutorily-mandated exhaustion requirements, however, are strongly disfavored and contrary to Supreme Court precedent. *See Ross v. Blake*, 136 S. Ct. 1850, 1856-57 (2016) (holding that "a court may not excuse a failure to exhaust" even under special circumstances).

[4] The Government also argues that Fields' failure to specifically raise the COVID-19 pandemic in his request to BOP, which predated the pandemic, shows that Fields failed to present to BOP the precise nature of his current request, thus rendering his compassionate release claim not fully exhausted as required under § 3582(c)(1)(A). Docket No. 216 at 3. However, the medical issues Fields raised in his initial request to BOP continue to underlie the instant motion, and Fields should not be required to file a new request due to each factual development in his case.

Numerous courts have found that a defendant satisfies the exhaustion requirement simply by making a formal initial request and allowing thirty days to elapse prior to filing suit, even where the warden denies the request within thirty days. *See, e.g.*, *United States v. Joling*, No. 6:11-cr-60131, 2020 WL 1903280, at *2 (D. Oregon April 17, 2020) (quoting *Brown v. United States*, 411 F. Supp. 3d 446, 452 (S.D. Iowa 2019) ("Exhaustion occurs when the BOP denies a defendant's application or lets thirty days pass without responding to it.")); *United States v. Heromin*, No. 8:11-cr-550, 2019 WL 2411311, at *1 (M.D. Fla. June 7, 2019) (holding that § 3582(c)(1)(A) requires the defendant to file an administrative request with the BOP "and then either exhaust administrative appeals <u>or</u> wait thirty days after submitting his request to the BOP" (emphasis added)). These courts have read the phrase "lapse of 30 days" to simply require the passage of 30 days, meaning that the warden would be given an initial opportunity to act on a request, but the defendant would not be required to undergo a potentially lengthy administrative appeal process in the event the warden denies the request during that time period.

Other courts have read the phrase "lapse of 30 days" to apply only where the warden does not grant or deny the request during those 30 days; if the warden acts within those 30 days, however, the defendant would be required to pursue an administrative appeal. *See United States v. Weidenhamer*, No. CR-16-01072-001, 2019 WL 6050264, at *4 (D. Arizona Nov. 8, 2019) (concluding that "the better reading is to require administrative exhaustion if a warden acts on a request within 30 days"); *United States v. Koch*, No. 201CR083, 2019 3837727, at *2 (E.D. Ky. Aug. 14, 2019) (noting statutory amendment "did not alter the requirement that prisoners must first exhaust administrative remedies before seeking judicial relief).

7

This case, however, presents a third scenario. Here, the warden denied Fields' compassionate release request more than 100 days after it was made. Accordingly, 30 days elapsed without decision, thus satisfying § 3582(c)(1)(A). *See United States v. Ebbers*, __ F. Supp. 3d ___, 2020 WL 91399, at *7 (S.D.N.Y. Jan. 8, 2020) ("exhaustion requirement . . . not at issue" where defendant petitioned BOP for compassionate release in July 2016, and BOP denied petition in August 2019); *United States v. Gray*, 416 F. Supp. 3d 784, 787-88 (S.D. Indiana 2019) (concluding that defendant need not have exhausted his administrative remedies before filing in court where warden denied request nearly 60 days after receiving the request). The Court therefore concludes that Fields has satisfied the exhaustion requirements of § 3582(c)(1)(A), and his motion is properly before the Court.

B. Merits

Once a district court determines that a defendant has satisfied the administrative exhaustion requirement, it may grant a motion for compassionate release if, after considering the applicable factors set forth in 18 U.S.C. § 3553(a),[5] it finds that "extraordinary and compelling reasons warrant

---

[5] That section provides, in relevant part, that a court consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

18 U.S.C. §§ 3553(a)(1), (2).

8

such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission," § 3582(c)(1)(A), which include consideration of whether the defendant is a danger to the safety of any other person or to the community, U.S.S.G. § 1B1.13(2).

      i.    *Whether extraordinary and compelling reasons warrant compassionate release*

The applicable policy statement issued by the United States Sentencing Commission, § 1B1.13 of the U.S.S.G., explains that extraordinary and compelling reasons may exist where the defendant is "suffering from a serious physical or medical condition . . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii)(I). The Court also finds that U.S.S.G. § 1B1.13 cmt. n.1(D) applies in this case. That provision mandates that, "[a]s determined by the Director of the [BOP], there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with" the other reasons enumerated in U.S.S.G. § 1B1.13 cmt. n.1. While the section refers to a BOP determination, the Sentencing Commission's policy statement was not amended after the enactment of the FSA. Consequently, "a growing number of district courts have concluded the Commission lacks an applicable policy statement regarding when a judge can grant compassionate release" . . . "because the Commission never harmonized its policy statement with the FSA." *United States v. Mondaca*, No. 89-CR-0655, 2020 WL 1029024, at *3 (S.D. Cal. Mar. 3, 2020) (citing *Brown*, 411 F. Supp. 3d at 447, 499 (collecting district court opinions)). This Court is persuaded by the reasoning of those district courts that it is "not constrained by the BOP Director's determination of what constitutes extraordinary and compelling reasons for a sentence reduction" and that it may consider any reason

9

it finds extraordinary and compelling. *Joling*, 2020 WL 1903280, at *3 (quoting *United States v. Young*, No. 2:00-cr-00002-1, 2020 WL 1047815, at *6 (M.D. Tenn. Mar. 4, 2020)).

Most significantly, the Court acknowledges the global COVID-19 pandemic, under which prisoners are particularly vulnerable to infection. *See* Center for Disease Control, Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities (Mar. 23, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/community/correction-detention/guidance-correctional-detention.html; Docket No. 217-1 (Declaration of Chris Beyrer, MD, MPH). This is particularly true at Fields' facility, FCI Terminal Island, where now more than "half of the inmates at the federal prison . . . have tested positive for the coronavirus in what has become the nation's worst outbreak in a federal penitentiary." Richard Winton, *Terminal Island Prison Inmates have Worst Coronavirus Outbreak in Federal System*, Los Angeles Times (Apr. 29, 2020), http://www.latimes.com/california/story/2020-04-29/coronavirus- terminal-island-prison-inmates-outbreak.html.[6] A review of Fields' medical records, Docket No. 208-1 (SEALED), supports Fields' assertion that his health condition and underlying medical problems render him acutely at risk given the current spread of COVID-19. Fields has shown that he is particularly vulnerable to COVID-19, and is being held in an institution where there has been a sizeable and ongoing outbreak of cases. Docket Nos. 218, 219. The Court therefore finds that Fields has demonstrated an extraordinary and compelling reason for compassionate release.

---

[6] A recent review of the BOP website tracking COVID-19 cases in BOP facilities reflects that, of the 1,051 inmates at FCI Terminal Island, 621 have tested positive for COVID-19, nd 6 have died from the virus. *See* Bureau of Prisons, COVID-19 Cases, http://www.bop.gov/coronavirus (last accessed May 6, 2020); FCI Terminal Island Inmate Population, http://www.bop.gov/locations/institutions/trm/ (last accessed May 6, 2020).

ii. *Consideration of the § 3553(a) factors and applicable policy statements, including whether Fields presents a danger to the safety to the community if released*

The Court also concludes that the applicable § 3353(a) factors weigh in favor of granting compassion release. While the Court acknowledges the seriousness of his offenses and his extensive criminal history, the Court nonetheless believes that the interests of justice support Fields' request for compassionate relief. As detailed above, the Court finds that Fields' serious medical conditions, which have developed subsequent to his original sentencing, are a significant factor which warrants a reduction of his sentence. While no one could have predicted the current pandemic at Fields' sentencing, the Court certainly did not intend to impose a potential death sentence.

The Court also concludes that a reduced sentence would be "sufficient, but not greater than necessary" to serve the goals identified in § 3553(a)(2). 18 U.S.C. § 3553(a). In light of his October 27, 2022, projected release date, granting Fields' compassionate release motion would reduce his sentence by roughly two-and-a-half years, or 30 months, resulting in an effective 120-month sentence. While it would be below the amended guideline range of 130 to 162 months identified by the Court at Docket No. 198, the Court now believes that a 120-month sentence in this case adequately expresses the seriousness of the offense, deters criminal conduct, and protects the public under § 3553(a). Although the Court declined to reduce Fields' sentence to the minimum 130-month amended guideline term in response to his Amendment 782 motion, it did so in part due to two disciplinary infractions Fields committed in 2016. Docket No. 198 at 2-4. The Supplemental PSR indicates that Fields has no reported disciplinary incidents in the more than three years since the Court considered Fields' Amendment 782 reduction request. Docket No. 220 (SEALED) at 1.

11

The Supplemental PSR further indicates that Fields has participated in several education courses and drug program activity since that time. *Id.* 1-2.

The Court likewise determines that Fields will not pose a danger to any person or to the community if released. Although the Probation Office's contrary conclusion certainly gives this Court pause, the Court is persuaded that the lengthy 15-year period of post-release supervision that remains unchanged by this Order ensures that Defendant will not pose a threat to the community. The Government objects to Fields' release on the grounds that he has failed to follow rules and conditions of release in the past and that he cannot be expected to follow the quarantine and social distancing measures currently in place. Docket No. 216 at 6-8. But this argument overlooks that incarceration is intended to be both punitive and rehabilitative. The Court is satisfied that Fields is now prepared to comply with court orders and the terms of his supervised release.

The Court also again notes that Fields' term of post-release supervision helps mitigate concerns that Fields would fail to adhere to the law and all mandates. Should Defendant fail to follow the quarantine or social distancing measures currently in place, or any other condition of release, the Court may fashion an appropriate sanction, which could include further incarceration. Because of his serious medical conditions, his recent record while in BOP custody, and the length of time already served, the Court concludes that Fields will not pose a danger to any person or the community if released.

## IV. CONCLUSION

For the foregoing reasons, the Court finds that the 18 U.S.C. § 3553(a) sentencing factors, extraordinary and compelling reasons under 18 U.S.C. § 3582(c)(1)(A) and U.S.S.G. § 1B1.13, and consideration of the applicable U.S. Sentencing Commission policy statements, including whether he will pose a danger to any person or the community if released, warrant Fields' immediate compassionate release. Accordingly, the Motion for Reduction in Sentence at Docket No. 207 is **GRANTED**. Fields shall be released from BOP custody as soon as the release plan is implemented, and travel arrangements made. The corresponding Judgment shall be issued forthwith.

IT IS SO ORDERED.

Dated: May 6, 2020.

/s/ James K. Singleton, Jr.
**JAMES K. SINGLETON, JR.**
Senior United States District Judge
